UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MISTY D. BROWN,<br>Plaintiff,<br>v.<br>DAVID STEINER,<br>Defendant. | Case No. 25-cv-10040-AGT<br><br>**ORDER ON MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Re: Dkt. No. 36 |

Appearing pro se, Misty Brown is suing Postmaster General David Steiner in his official capacity for disability discrimination, failure to accommodate, retaliation, and a hostile work environment, all under Section 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq*. Brown amended her complaint once as a matter of course, and then the Court granted Steiner's motion to dismiss her first amended complaint with leave to amend. Dkts. 14, 31. Now Steiner has moved to dismiss Brown's second amended complaint. Dkt. 36. Three of the four claims haven't been saved by the latest amendment and will be dismissed with prejudice. The remaining claim, Brown's retaliation claim, is now well pleaded. The Court accordingly grants in part and denies in part Steiner's motion to dismiss.

## I. BACKGROUND

Brown alleges the following facts in support of her claims. The Court accepts these allegations as true at the pleading stage. *Retail Prop. Tr. v. United Blvd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014).

Brown started working for the United States Postal Service ("USPS") in 1998. Dkt. 33, SAC ¶ 31. She was a mail carrier; she sorted mail and delivered it along a route. ¶ 32. In 2004, she injured her knee. ¶ 33. The injury proved serious and she had knee surgeries in 2005, 2007, and 2009. *Id.* During the following decade, she spent two-plus years on medical leave and then worked in a limited-duty role. ¶¶ 34–37. In 2014, her doctor placed her on leave again, this time for depression and anxiety. ¶¶ 37, 39. Her leave lasted nine years and continued until she received disability-retirement approval in 2023. ¶ 44.

Brown alleges that USPS discriminated against her because of her disabilities, but not in the usual sense. Often, workplace disability-discrimination claims arise when an employer terminates an employee who is disabled or fails to offer the employee an accommodation, such as a modified role or the use of equipment that could allow the disabled employee to perform the essential functions of the job. *See, e.g.*, *Nunies v. HIE Holdings, Inc.*, 908 F.3d 428, 430–31 (9th Cir. 2018) (termination due to shoulder injury); *US Airways, Inc. v. Barnett*, 535 U.S. 391, 394 (2002) (request to remain in less physically demanding position due to back injury denied). Brown isn't pursuing a claim of that kind. She doesn't allege that USPS terminated her: she remained a USPS employee until her retirement in 2023. And she doesn't allege that USPS failed to accommodate her disability on the job: USPS placed her on medical leave for nine years, from 2014 to 2023, and an extended unpaid medical leave can be a reasonable accommodation when it doesn't unduly burden the employer.

*Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1247 (9th Cir. 1999).

Brown's claims instead relate to paperwork. During her leave, USPS required her to regularly submit doctor's notes and other medical records to support her continued absence. *E.g.*, SAC ¶¶ 41, 49, 85. Brown didn't object to that requirement and did her best to comply with it, but she alleges that USPS repeatedly erred in processing her records, and perhaps even tried to use the medical-record requirement to terminate her leave—claiming that she hadn't submitted necessary paperwork when she had done so. *E.g.*, ¶¶ 46–49, 87–91, 95.

The trouble began in August 2018 when USPS issued a notice of proposed separation. ¶ 46. The notice stated that Brown had been on leave without pay for more than a year and was unable to perform the duties of her position. Brown alleges that the notice was based on an insufficient review of her supporting medical documentation, which supported her continued leave. ¶ 49. Her union challenged the notice and convinced USPS to rescind it approximately seven months later. ¶ 80.

In November 2018, however, while her union grievance was pending, her supervisor Yadira Levesque assisted in completing a form that USPS sent to the U.S. Department of Labor ("DOL"), on which it was written that Brown no longer worked for USPS. ¶¶ 51–52. Brown was still a USPS employee at the time, albeit an employee on extended medical leave, and USPS's erroneous representation about her employment status (taking Brown's allegations about the form as true) could have caused her to lose workers' compensation benefits. ¶¶ 54, 60. Brown spent time and effort correcting the DOL record and ultimately didn't lose her benefits. ¶¶ 61–68.

In April 2019, after USPS had rescinded its 2018 notice of proposed separation, USPS directed Brown to start sending her leave-related medical records to the Occupational

Health Nurse Administrator. ¶ 82. Brown complied. And yet twice in the twelve-month period that followed, supervisor Levesque issued a five-day absence notice, wherein she said Brown hadn't provided acceptable medical documentation and warned that her failure to do so could result in her termination. ¶¶ 87, 90. Brown responded by explaining that, as USPS had directed her to do, she had sent her medical records to the Occupational Health Nurse Administrator. ¶¶ 88, 91. Her supervisor didn't respond but also didn't issue any further five-day absence notices, and USPS didn't terminate Brown's employment. ¶ 89.

Again, in July 2020, USPS issued a notice of proposed separation. ¶ 100. Like the 2018 notice, USPS said that Brown had been on leave without pay for more than a year and was unable to perform the duties of her position. The 2020 notice was issued by an acting supervisor who had limited knowledge of Brown and her medical history. ¶ 102. After Brown initiated EEO counseling, USPS rescinded the 2020 notice. ¶¶ 104–05.

During this three-year period (2018–2020), each time USPS issued a notice of proposed separation or a notice of absence, Brown substantiated her medical leave. She wasn't terminated, didn't lose workers' compensation benefits, and ultimately USPS approved her disability retirement. But the process of defending her medical leave and countering USPS's errors—or worse, perhaps USPS's attempts to end her leave unjustifiably—burdened her. She initiated union grievances, filed EEOC complaints, corresponded with DOL, and participated in arbitration. *E.g.*, ¶¶ 48–50, 61–66, 71–77, 81, 104–106. And along the way, USPS wasn't transparent, didn't always (or fully) respond to her inquiries, and relied on an incomplete record during EEOC proceedings. *E.g.*, ¶¶ 49, 73–74, 89, 109–113, 116.

Because of how USPS treated her from 2018 to 2020, Brown contends that Postmaster General David Steiner engaged in disability discrimination, failed to accommodate her

disability, retaliated against her, and created a hostile work environment, all in violation of the Rehabilitation Act. Steiner asserts that Brown has failed to state an actionable claim and seeks dismissal with prejudice.

## II. LEGAL STANDARD

The Court takes the well-pleaded factual allegations in the complaint as true, construes them in the light most favorable to the nonmoving party, and evaluates whether they state a plausible claim for relief. *Retail Prop. Tr.*, 768 F.3d at 945. The Court construes pro se pleadings liberally. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).

## III. DISCUSSION

### A. Disability-Discrimination Claim

The Rehabilitation Act expressly prohibits USPS from engaging in disability discrimination, 29 U.S.C. § 794(a), and incorporates the standard set forth in Title I of the Americans with Disabilities Act of 1990, § 794(d); *Coons v. Sec'y of U.S. Dep't of Treasury*, 383 F.3d 879, 884 (9th Cir. 2004). Under the ADA, "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

It is undisputed that Brown had a disability. For present purposes, the Court will also assume that she was qualified for her mail-carrier position. Even so, she hasn't plausibly alleged that Steiner discriminated against her "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." *Id.*

When Brown became too disabled to work due to depression and anxiety, USPS gave

her what she wanted: an extended leave of absence. Brown nevertheless contends that USPS treated her adversely during her leave by erroneously issuing proposed separation notices and absence notices, by inaccurately telling DOL she wasn't working for USPS, and by asking her for medical records she had already submitted. SAC ¶ 130. These miscues, while understandably frustrating, didn't result in Brown's termination or loss of benefits. With her insistence, USPS's errors were corrected, the proposed separation notices were rescinded, and she stayed on approved medical leave until retirement.

To plausibly allege discrimination, Brown must identify "some harm respecting an identifiable term or condition of employment." *Muldrow v. City of St. Louis*, 601 U.S. 346, 355 (2024). She hasn't done so. Despite her back-and-forth with USPS over medical records and USPS's mistaken notices and representations to DOL, the terms and conditions of her employment and medical leave didn't change.

* * *

In granting Steiner's motion to dismiss the first amended complaint, the Court evaluated whether USPS's conduct had "*materially* affected the compensation, terms, conditions, or privileges of [Brown's] employment." Dkt. 31 at 2 (citation modified). Steiner continues to cite that standard (dkt. 36 at 7–8), and some district courts continue to apply it to Rehabilitation Act discrimination claims. *See, e.g.*, *Lau v. Mayorkas*, No. 21-CV-04756-TLT, 2025 WL 1482385, at *6 (N.D. Cal. Jan. 27, 2025).

In *Muldrow*, however, the Supreme Court rejected a comparable standard in evaluating a discrimination claim under Title VII, holding that although an employee must show "some harm respecting an identifiable term or condition of employment," 601 U.S. at 355, the harm doesn't need to meet a "significance test," *id.* at 350; *see also id.* at 355

("'Discriminate against' means treat worse . . . . [But] [t]o demand 'significance' is to add words—and significant words, as it were—to the statute Congress enacted.").

Title VII's standard is materially the same as the ADA's, which the Rehabilitation Act incorporates. *See* 29 U.S.C. § 794(d); *Garity v. APWU Nat'l Lab. Org.*, 828 F.3d 848, 858 n.9 (9th Cir. 2016) ("[D]ue to the similarities in language and purpose between the two statutes, courts around the country—unless they find a good reason to do otherwise—generally use Title VII precedent to interpret ADA claims."). There is thus good reason to believe that *Muldrow*'s holding applies equally to Rehabilitation Act discrimination claims.

But even under *Muldrow*, as held above and further explained here, Brown's discrimination claim comes up short. There's no need here to draw a line between *some* changes to the terms and conditions of employment and *material* changes. Brown hasn't identified *any* changes to the terms and conditions of employment during the relevant period, 2018–2020. During those years, she remained on leave and continued receiving worker's compensation benefits. USPS's errors in processing her paperwork were corrected and didn't alter "an identifiable term or condition of employment." *Muldrow*, 601 U.S. at 355.

Brown hasn't stated a claim for disability discrimination. She has had three attempts to do so, so the Court concludes that a further amendment would be futile. The Court grants Steiner's motion to dismiss Brown's disability-discrimination claim without leave to amend. *See Chodos v. West Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) ("[W]hen a district court has already granted a plaintiff leave to amend, its discretion in deciding subsequent motions to amend is 'particularly broad.'" (quoting another source)).

\\

\\

### B. Failure-to-Accommodate Claim

To state a failure-to-accommodate claim under the Rehabilitation Act, "a plaintiff must allege that (1) he is disabled, (2) he is a qualified individual, and (3) a reasonable accommodation is possible." *McCarthy v. Brennan*, No. 15-CV-03308-JSC, 2016 WL 946099, at *10 (N.D. Cal. Mar. 14, 2016) (citing *Zukle v. Regents of the Univ. of Cal.*, 166 F.3d 1041, 1045 (9th Cir. 1999); *Buckingham v. United States*, 998 F.2d 735, 739–40 (9th Cir. 1993)). As the Court did in evaluating Brown's discrimination claim, it again assumes that Brown was disabled and a qualified individual. The Court's analysis turns on element 3—whether a reasonable accommodation was possible.

Previously, in holding that the first amended complaint's allegations didn't satisfy element 3, the Court explained that USPS wasn't required to accommodate Brown's disability "through an indefinite, decade-long leave of absence when Brown never appear[ed] to have stated 'when and under what conditions she could return to work.'" Dkt. 31 at 1 (quoting *Dark v. Curry Cnty.*, 451 F.3d 1078, 1090 (9th Cir. 2006)).

For the second amended complaint, the Court reaches the same conclusion—Brown hasn't satisfied element 3—but for a different reason. Upon further review, the Court notes that even if USPS wasn't required to provide Brown with a decade-long leave of absence, USPS *did* provide that accommodation. USPS allowed Brown to remain on medical leave from 2014 until her retirement in 2023. USPS, then, clearly accommodated Brown's disability through a leave of absence. But Brown contends that *during her leave*, USPS failed to accommodate her "in the handling of her medical leave, medical documentation, return-to-work status, and related employment-status communications." SAC ¶ 136.

Brown's approach to element 3 is still flawed. It confuses paperwork errors with a

failure to accommodate a disability. The employer's duty to engage in the interactive process and to provide a reasonable accommodation is triggered when the employee "requests an accommodation or [the] employer recognizes the employee needs an accommodation." *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002). The only accommodation Brown asked for was a leave of absence, and USPS provided it.

Brown doesn't allege that, while on leave, she requested any accommodation concerning USPS's medical-leave documentation requirements, or that her disability interfered with her ability to comply. She doesn't allege, for example, that she needed (and requested) more time to submit medical records and that USPS denied such a request. She only challenges how USPS handled her paperwork, which isn't a failure to accommodate a disability.

Brown hasn't stated a claim for failure to accommodate her disability. Here, too, she has tried to plead her claim three times. The Court thus concludes that a further amendment would be futile and grants Steiner's motion to dismiss Brown's failure-to-accommodate claim without leave to amend. *Chodos*, 292 F.3d at 1003.

**C. Retaliation Claim**

To state a claim for retaliation under the Rehabilitation Act, a plaintiff must allege "(1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two." *Coons*, 383 F.3d at 887 (quoting another source). For the second element, "[a]n adverse employment action is any action reasonably likely to deter employees from engaging in protected activity." *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 850 (9th Cir. 2004) (citation modified).[1]

[1] *Pardi* evaluated an ADA retaliation claim, but "retaliation claims arising under the Rehabilitation Act are analyzed under the same rubric." *Breyer v. Pac. Univ.*, No. 20-35304, 2021 WL 3829966, at *1 n.1 (9th Cir. Aug. 27, 2021).

Steiner doesn't dispute that Brown engaged in protected activity. Among other things, Brown filed a union grievance and two EEOC complaints. *See* SAC ¶¶ 48, 77, 106; *Pardi*, 389 F.3d at 850 ("Pursuing one's rights under the ADA constitutes a protected activity. It is undisputed that Pardi lodged numerous union grievances and EEOC charges regarding Kaiser's failure to accommodate his disability.") (citations omitted).

For present purposes, the Court focuses only on the first example of protected activity. After USPS issued its first notice of proposed separation, on August 24, 2018, Brown initiated a union grievance, SAC ¶¶ 46–48, and on November 6, 2018, the union interviewed her supervisor, Yadira Levesque, about the proposed separation, ¶ 49. Two weeks later, Levesque assisted in completing a form that USPS sent to DOL, on which it was written that Brown no longer worked for USPS. ¶¶ 51–53.

USPS's representations to DOL plausibly rise to the level of an adverse action (element 2). The statements could have been interpreted as meaning that Brown wasn't a USPS employee anymore, which could have caused her to lose workers' compensation benefits. ¶¶ 53, 58–60. After repeatedly consulting with DOL, Brown corrected the record. ¶¶ 61–68. But the threat of losing benefits could have "reasonably . . . deter[red] [her] from engaging in protected activity." *Pardi*, 389 F.3d at 850 (quoting another source); *cf. United States v. Hawaii*, 2015 WL 5063956, at *14 n.9 (D. Haw. Aug. 26, 2015) ("The court has no difficulty finding that withholding an employee's wages for weeks and/or months would reasonably likely deter someone from engaging in protected activity.").

Brown has also plausibly alleged a causal link between her protected activity and the adverse action (element 3). Her supervisor helped complete the DOL form only two weeks after the union interviewed her about the proposed separation notice. SAC ¶ 51. Courts have

held that three- and five-month gaps between protected activity and an adverse action can "give rise to a plausible inference of causation at the pleading stage." *McCarthy*, 2016 WL 946099, at *13 (citing *Gordon v. Hughes*, 2015 WL 1549141, at *2 (D. Nev. Apr. 8, 2015)). The two-week gap here was much shorter.

Other inferences are possible. The same paperwork mistakes that resulted in USPS sending Brown a proposed separation notice may also explain why her supervisor incorrectly conveyed to DOL that Brown wasn't working for USPS. But drawing all reasonable inferences in Brown's favor, *Retail Prop. Tr.*, 768 F.3d at 945, it is also plausible that Brown's supervisor said what she did because Brown initiated the union grievance.

Pointing to a copy of the DOL form, which Brown filed in opposition to Steiner's motion to dismiss the first amended complaint (dkt. 26 at 13), Steiner notes that a different USPS employee, Beatriz Lopez, signed the form (dkt. 37 at 4). Brown doesn't allege that Lopez knew about her union grievance, so Steiner insists that a causal connection between Brown's union grievance and USPS's statements to DOL isn't plausible.

Brown didn't attach the DOL form to her second amended complaint, and neither side asked the Court to incorporate it by reference. It is thus unclear whether it should be considered at this time. But even if considered, the DOL form doesn't contradict Brown's allegations. She alleges that supervisor Levesque assisted in completing the DOL form. SAC ¶ 51. Taking that allegation as true, *Retail Prop. Tr.*, 768 F.3d at 945, a causal connection between Brown's union grievance, which Levesque knew about, SAC ¶ 49, and USPS's statements to DOL is established.

To the extent that Brown's retaliation claim is based on the DOL form, Steiner also asserts that Brown has "not plausibly allege[d] that she timely exhausted administrative

remedies." Dkt. 36 at 10. Administrative exhaustion "is an affirmative defense, so the defendant bears the burden of pleading and proving it." *Kraus v. Presidio Tr. Facilities Div./Residential Mgmt. Branch*, 572 F.3d 1039, 1046 n.7 (9th Cir. 2009) (quoting another source). Steiner hasn't carried his burden. Steiner hasn't asked the Court to take judicial notice of the administrative record, and the lack of exhaustion is not "obvious on the face of [the] complaint." *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013).

Brown has stated a plausible retaliation claim. With respect to this claim, the Court denies Steiner's motion to dismiss.

**D. Hostile-Work-Environment Claim**

To state a disability-based hostile-work-environment claim, a plaintiff must allege that she "was subjected to harassment because of [her] disability, and that the harassing conduct was sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive work environment." *Mattioda v. Nelson*, 98 F.4th 1164, 1174 (9th Cir. 2024) (citation modified).

Brown maintains that USPS created a hostile work environment by sending her proposed separation notices and absence notices, inaccurately representing her employment status to DOL, and duplicating requests for medical records. SAC ¶¶ 159, 162. The actions she's identified don't rise to the level of harassment.

Harassment consists of "discriminatory intimidation, ridicule, and insult." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting another source). It is typically based on severe or pervasive "derogatory comments," *Mattioda*, 98 F.4th at 1177, or unwelcome physical contact (e.g., "plaintiff's harasser hugged her more than 100 times over many years," *id.* (citing *Zetwick v. County of Yolo*, 850 F.3d 436, 443–44 (9th Cir. 2017))).

Brown hasn't identified any "verbal or physical conduct of a harassing nature." *Arizona ex rel. Horne v. Geo Grp., Inc.*, 816 F.3d 1189, 1206 (9th Cir. 2016) (quoting another source). She doesn't allege that USPS made any derogatory or humiliating statements in the paperwork it sent her, or that any USPS employee inappropriately touched her. Because Brown hasn't pinpointed any harassment, the Court concludes that she has not plausibly alleged a hostile work environment.

The Court grants Steiner's motion to dismiss Brown's hostile-work-environment claim. Brown has failed to plead this claim multiple times, so the Court concludes that a further amendment would be futile. The Court dismisses the claim without leave to amend. *Chodos*, 292 F.3d at 1003.

## IV. CONCLUSION

The Court grants in part and denies in part Steiner's motion to dismiss Brown's second amended complaint. The motion is granted as to Brown's disability-discrimination claim, reasonable-accommodation claim, and hostile-work-environment claim. The Court dismisses those claims with prejudice. The motion is denied as to Brown's retaliation claim.

Steiner shall answer the operative complaint by September 21, 2026. The initial case management conference remains scheduled for October 2, 2026, at 2:00 p.m., and will be held via Zoom webinar. One week before the case management conference, the parties shall update the case management statements they filed on August 7, 2026.

**IT IS SO ORDERED.**

Dated: August 31, 2026

Alex G. Tse
United States Magistrate Judge